**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| Fulmen Company, et. al.<br><br>                         *Plaintiffs,*<br><br>   v.<br><br>The Office of Foreign Assets Control, et. al.<br><br>                        *Defendants.* | CIVIL ACTION NO.<br>1:18-02949 (RJL) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT,
AND
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION....................................................................................1

BACKGROUND....................................................................................2

ARGUMENT........................................................................................8

I.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS...8

    A.  The Applicable Standards under Rules 12(b)(1), 12(b)(6) and 56...........8

    B.  Fulmen Has Standing To Assert Claims For Violation Of
       The Constitution................................................................................10

    C.  Fulmen's Procedural Due Process Claim Is Not Time-Barred
       Because Fulmen was Required to Exhaust the Administrative
       Remedies Before pursuing a Claim in Court......................................12

    D.  Fulmen's Procedural Due Process Claims Do Not Fail On The Merits..13

    E.  Defendants' Reliance on Secret Evidence Violated Fulmen's
       Due Process Rights..............................................................................13

    F.  Continued Designation with No Foreseeable Termination is Taken
       Under The Fifth Amendment.............................................................15

II.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS
    FULMEN'S APA CLAIMS....................................................................16

    A. Standard of Review ............................................................................17

    B. OFAC's Denial of Fulmen's Request for Delisting is Arbitrary and
       Capricious.........................................................................................18

    C.  OFAC's Denial was made without Adhering to Required
        Procedure..........................................................................................19

    D.  In a Case Similar to Fulmen, OFAC Delisted Gotovina from
        the SDN List: Gotovina v. OFAC at. al. (D.C. District Court
        Case No. 14-cv-00016)......................................................................20

    E.  OFAC's Denial Should be Reviewed *De Novo*...................................21

III. Fulmen Is Entitled To A Writ Of Mandamus......................................22

IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD
     BE DENIED.......................................................................................23

     A. The Relevant Standard...................................................................23

     B. Pursuant To Rule 56(f) of the Federal Rules of Civil Procedure,
        Fulmen Must Be Granted Discovery..............................................24

V. FULMEN IS ENTITLED TO SUMMARY JUDGMENT ON ITS
    CROSS-MOTION..............................................................................24

     A. The Relevant Standard on Summary Judgment................................24

     B. Standard on Collateral Estoppel......................................................25

     (1) the issues have already been litigated.............................................25
     (2) determined by a valid, final judgment on the merits.........................27
     (3) after a full and fair opportunity for litigation by the parties or their privies..........27
     (4) under circumstances where the determination was essential
        to the judgment, and not merely dictum..........................................27

     C. This Court Should Recognize and Enforce The Judgment of The
        EU Court of Justice.......................................................................27

CONCLUSION........................................................................................29

CERTIFICATE OF SERVICE...................................................................29

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE**

*A.S.P.C.A. v. Ringling Brothers and Barnum & Bailey Circus,*
   502 F. Supp. 2d 103, 106 (D.D.C. 2007)..............................................24

*Abourezk v. Reagan,*
   785 F.2d 1043, 1060 (D.C. Cir. 1986)..............................................14,15

*Al-Aqeel v. Paulson,*
   568 F. Supp. 2d 64, 69 (D.D.C. 2008)................................................10

*Ali Baba Co. v. WILCO, Inc.,*
   482 A.2d 418, 421 (D.C.1984)..........................................................25

*Armstrong v. Manzo,*
   380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)...............10

*Bayer v. United States Dep't of Treasury,*
   956 F.2d 330, 333 (D.C. Cir. 1992)..................................................23

*Bismullah v. Gates,*
   501 F.3d 178, 180, 187 (D.C. Cir. 2007)............................................14

*Browning v. Clinton,*
   292 F.3d 235, 242 (D.C.Cir.2002).....................................................8

*Cabinet Mountains Wilderness v. Peterson,*
   685 F. 2d 678, 685-86 (D.C. Cir. 1982)..............................................21

*Cardenas v. Smith,*
   733 F.2d 909, 913 (D.C. Cir. 1984)...................................................11

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 323 (1986)...............................................................23

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402, 416 (1971)...............................................................21

*Deleu v. Scaife,*
   775 F. Supp. 712, 716 (S.D.N.Y. 1991)..............................................23

*District Intown Properties, Ltd. v. District of Columbia Dep't of Consumer & Regulatory Affairs,*
    680 A.2d 1373, 1378 n.7 (D.C. 1996)…………………………………………25

*Flores v. United States,*
    551 F.2d 1169, 1175 n.6 (91 h Cir. 1977)………………………………16

*Giannullo v. City of New York,*
    322 F.3d 139, 140-41 (2d Cir. 2003)……………………………………23

*Greene v. McElroy,*
    360 U.S. 474, 496 (1959)………………………………………………14

*Goldberg v. Kelly,*
    397 U.S. 254, 269 (1970)………………………………………………14

*Gotovina v. OFAC et al.*
    (DC District Court Case No. 14-cv-00016)……………………………20,21

*Hellstrom v. United States Dep't of Veteran Affairs,*
    201 F.3d 94, 97-98 (2d Cir. 2000)………………………………………23

*Holy Land Found. for Relief and Dev. v. Ashcroft,*
    219 F. Supp. 2d 57 (D.D.C. 2002), *aff'd,* 333 F.3d 156 (D.C. Cir. 2003)…8,17

*Krieger v. Fadely,*
    211 F.3d 134, 136 (D.C. Cir. 2000)……………………………………10

*Lowe v. Winter,*
    No. 06-1803 (ESH), 2007 WL 2015389, at *1 (D.D.C. July 12, 2007)……….24

*Mathews v. Eldridge,*
    424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976)…………………10

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29, 43 (1983)…………………………………………………18

*Nat'l Council of Resistance of Iran v. Dep't of State ("NCRI"),*
    251 F.3d 192, 201 (D.C. Cir. 2001)……………………………………10

*Oneida Indian Nation of N.Y. v. County of Oneida,*
    414 U. S. 661, 666 (1974)………………………………………………8

iv

*Regan v. Wald,*
    468 U.S. 222, 242 (1984)……………………………………………………..18

*Rochon v. Gonzales,*
    438 F.3d 1211, 1216 (D.C. Cir. 2006)………………………………………8

*Russian Volunteer Fleet v. United States,*
    282 U.S. 481, 491-92 (1931)……………………………………………………11

*Schattner v. Girard, Inc.,*
    215 U.S. App. D.C. 334, 336, 668 F.2d 1366, 1368 (1982)……………………25

*Smith v. Jenkins,*
    562 A.2d 610 (1989)……………………………………………………………25

*Steel Co. v. Citizens for Better Environment,*
    523 U.S. 83, at 89 (1998)………………………………………………………8

*Tarek H. Jifry, et. al. v. FAA, et al.,*
    DC Court of Appeals, Nos. 03-1085, 03-1143,  03-1144 and 03-1282.
    Decided: June 11, 2004)………………………………………………………11

*Van Drasek v. Lehman,*
    762 F.2d 1065, 1068 (D.C. Cir. 1985)…………………………………………15

*Washington Med. Ctr. v. Holle,*
    573 A.2d 1269, 1283 (D.C. 1990)……………………………………………25

*Youngstown Sheet & Tube Co v. Sawyer,*
    343 U.S. 579, 631 (1952)………………………………………………………16

**STATUTES**

5  U.S.C. § 702……………………………………………………………………18
5  U.S.C. § 706……………………………………………………………………17
5  U.S.C. § 706 (2)(A)……………………………………………………………18
5  U.S.C. § 706 (2)(D)……………………………………………………………19
5  U.S.C. § 706 (2)(F)……………………………………………………………21
5  U.S.C. § 706 (1) and (2)………………………………………………………17
28 U.S.C. § 1491…………………………………………………………………15
50 U.S.C. §§ 1701-1706 ……………………………………………………………1
50 U.S.C. § 1702 (c)………………………………………………………………14

**RULES**
Fed. R. Civ. P. 12 ................................................................................. 7,8
Fed. R. Civ. P. 56 ................................................................................7,8,24

**REGULATIONS**
31 C.F.R. § 501..................................................................................21
31 C.F.R. § 501.807 ...........................................................................21
31 C.F.R. § 501.807 (b)......................................................................19
70 C.F.R. § 38567 (June 28, 2005)...................................................... 1

**U.S. CONSTITUTION**
U.S. Const. amend. V...............................................................5,9,11,15,16

**OTHER AUTHORITIES**
Council Decision 2010/413, https://eur-
lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2010:195:
0039:0073:EN:PDF................................................................4,14,18,25,26,27

Decision of General Court of the European Union ............................... *passim*

Decision of Court of Justice of the European Union............................ *passim*

Exec. Order No. 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001).. .............................. 4
Exec. Order No. 13382, 70 Fed. Reg. 38567 (June 28, 2005)....................... *passim*
Exec. Order No. 13382, 74 Fed. Reg. 19635 (Apr. 29, 2009) ............................1,4,9

U.S. Dep't of State Fact Sheet (Exhibit "A")..................................... *passim*

Joint Comprehensive Plan of Action (JCPOA) in 2016.....................................3

United Nations Participation Act ("UNPA")......................................................4

vi

## INTRODUCTION

Pursuant to 50 U.S.C. §§ 1701-1706, also known as the International Emergency Economic Powers Act or "IEEPA", the President has the authority to impose economic sanctions on persons and entities that **materially contribute to the proliferation of weapons of mass destruction** (emphasis added). Acting pursuant to the IEEPA and Executive Order No. 13382 ("E.O. 13382"),[1] the State Department on November 21, 2011, designated Fulmen Company and Fulmen Group (hereinafter "Fulmen"), allegedly for contributing to Iran's covert uranium enrichment facilities, barring U.S. persons from doing business with Fulmen and blocking their U.S. assets.[2] Such designation usually is reserved to the Office of Foreign Assets Control (OFAC) within the Treasury Department. Fulmen adamantly denied the allegations, and, in 2013, the General Court of the European Union (EU) and the Court of Justice of the European Union annulled the EU's designation of Fulmen and its director on identical grounds (AR-99-113).[3] Fulmen thereafter requested reconsideration of the State/OFAC designation because its designation was based on the reciprocity system established with the EU. The request was denied on July 20, 2018 (AR-00501-2).

---

[1] 70 Fed. Reg. 38567 (June 28, 2005)

[2] Pls' Exhibit "A" --- See, also, The Department of State Fact Sheet can be accessed at https://2009-2017.state.gov/r/pa/prs/ps/2011/11/177608.htm; See also AR-00075-81 at 76-77.

[3] Fulmen had been placed on the EU sanctions list on June 17, 2010. See Annex VIII to Regulation No. 961/2010

The denial letter made no reference to the EU Courts' decisions, in particular, the Court of Justice, including why it apparently was discounted despite reciprocity and despite having been reached using a stricter burden of proof standard.[4] On December 14, 2018, Fulmen filed this lawsuit challenging the OFAC denial as arbitrary and capricious. OFAC is collaterally estopped from denying reconsideration and delisting Fulmen.

On March 25, 2019, Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment. For the reasons set forth herein, Defendants' motions should be denied, and Plaintiffs' Cross-Motion for Summary Judgment and requested relief granted.

## BACKGROUND

Basic facts of this case, as set forth by the Government (dates on which certain actions occurred, etc.), are not in dispute. As such, rather than reiterate, Plaintiffs ask the Court to take notice that:

1.      While, generally, OFAC prepares and maintains the sanctions lists, in the present case, the U.S. Department of State initially sought the designation of Fulmen on the SDN list (Def. memo, p.5) – See also footnote 2, *supra*. OFAC itself clearly was unaware of any violation or misconduct by Fulmen that warranted its designation.

2.      The State Department's decision to designate Fulmen was based primarily on the same allegations that led to the listing of Fulmen by the EU in 2010.  See Def. memo at p. 6.  After the review of the facts, the EU listing was

---

[4] The EU Court's decisions was based on a probable cause burden of proof standard while OFAC's decision-making must satisfy a "reasonable cause to believe", a standard far lower than the probable cause standard relied upon by the EU Court.

2

annulled by the Court of Justice of the European Union in 2013 (AR-00136-155 at 154). As such, there are no grounds to maintain Fulmen on the OFAC SDN list.

3.      Fulmen Company is a for-profit corporation organized in Iran by a group of university professors in 1975, four years before the Iranian revolution. Fulmen Company and Fulmen Group ("Fulmen") are active in the transmission and distribution of electricity (T&D).   They also manufacture and service products required for transmitting electricity such as switches, and capacitors. Prior to its listing on the SDN, Fulmen purchased required batteries from South Korea, which has since refused to sell to Fulmen.[5]

4.      Fulmen is not related to the Iranian Government and was NOT among the list of companies that were removed from the SDN list after the Joint Comprehensive Plan of Action (JCPOA) in 2016.[6]

5.      In recent years, Fulmen became involved in the manufacturing of electric scooters and min-motorcycles, commonly used in Iran and the region. This increased Fulmen's demand for rechargeable lithium batteries.  Unable to purchase batteries from South Korea because of being listed on OFAC SDN, Fulmen had no choice but to purchase them from the sole local manufacturer, Saba Batteries (Niru Battery), which is also on SDN list.

6.      Fulmen has no expertise in uranium enrichment and was never involved in providing services to any uranium enrichment facility (Qom and Nataz), as has been alleged.   Two EU courts found insufficient proof of the

---

[5] In 2009, Fulmen signed an agreement with the South Korean company, Hyundai Heavy Industries.

[6] Recently all these companies that were removed from SDN in 2016 were put back on the SDN list.  Being a non-governmental organization, Fulmen was not part of the JOPA agreement.

allegations, and ordered the EU sanctions lifted.[7] (See also AR-00151). Without evidence to the contrary otherwise adduced, OFAC is obligated to do likewise.

7.      The allegations against Fulmen are taken directly from the EU list, despite the fact that IEEPA makes no reference to designations by other authorities as a legal basis for designation under E.O. 13382. Indeed, unlike other sanctions programs issued under multiple authorities and thereby allowing for reciprocity of designations (e.g., E.O. 13224 issued under IEEPA and the United Nations Participation Act ("UNPA"), E.O. 13382 contain no such language. Nonetheless, the State Department Fact Sheet mimics the factual findings of the EU Council in designating Fulmen, but the Department and OFAC have refused reciprocity.[8]

8.      Two new names (allegations) appear in the Department of State Fact Sheet (See. e.g. Exhibit "A"), to wit: Kalaye Electric and Natanz Uranium Enrichment Plant.  Specifically, in paragraph 2, it states:

> "Additionally, Fulmen has worked with the U.S. and UN-designated firm Kalaye Electric on the **construction of elements** of the Natanz Uranium Enrichment Plant" (emphasis added)

---

[7] The EU Court pointed out, while "overriding considerations pertaining to the security of the EU or of its Member States may justify the non-disclosure of some evidential information to the person concerned". "**However, the Council must state the specific reasons precluding disclosure of such information, or at least provide the Courts of the EU with a summary outlining the content of the confidential information in question**."  The Court pointed out since the Council did not produce evidence to the EU Courts, or a summary of the confidential information, the Courts based their decision on the material which has been disclosed to them. The Court of Justice therefore affirmed the General Court decision that ruled the Council had not proved the alleged involvement of Fulmen and Mr. Mahmoudian in nuclear proliferation. **Consequently, the Court dismissed the Council's appeal. (earlier emphasis was added)** – See also Press release by the Court of Justice of the European Union PRESS RELEASE No 151/13, Luxembourg, 28 November 2013 – See, also, AR-00153-4).

[8] See Footnote 2, *supra*

In part of Paragraph 3, the Fact Sheet states:

> "making Fulmen's activities at both Qom and Natanz a material contribution to those facilities' gas centrifuge plant for uranium enrichment" (See, e.g. footnote 2 *supra*)

The allegations provided in these paragraphs are vague, unsubstantiated and cannot be taken seriously.[9]  Fulmen denies each of these claims and renews its demand for production of any and all evidence on which the State Department and OFAC relied for their decisions.

9.   As stated in Fulmen's response to OFAC inquiries, Fulmen **has no special and/ or direct relationship** with Niru-Niroo/Saba Battery (AR-00183-4). The total cost of batteries purchased by Fulmen comprises a very small (less than 2%) portion of the total cost of projects it handles. Also, the primary decision for purchasing batteries is generally made by contractors with the approval of the customers, not directly by Fulmen. Further, the batteries are off-the-self products, not specifically manufactured for Fulmen.   These are the only locally manufactured batteries that are approved by the Regional Electrical companies (Fulmen's primary customers), and are available only from Niru-Niroo/Saba because Fulmen's previous South Korean suppliers are prohibited from doing business with Fulmen as long as it is SDN-listed.

---

[9] These appear to be add-on allegations taken from several unverified and unconfirmed blogs and websites for which OFAC does not have a shred of evidence to be able to prove (See, e.g. AR-0004-5).

10.    Considering the Natanz site was under the full control of the International Atomic Energy Agency (IAEA),[10] the list of all companies involved in the construction of that site are not secret, fully disclosed and known to IAEA, UN and U.S. Government; Fulmen is not among them.

11. In 2002, when the Natanz site was under the development, Fulmen was under control of the T&D division of the French company known as Alstom. Today Alstom is part of General Electric USA.

12.    OFAC's letter denying reconsideration is inexplicably silent on the EU Courts' decisions to delist Fulmen (AR-501-2), despite State Department reliance on the now-revoked EU sanctions (See footnote 2, *supra*.)

13.    OFAC relies on redacted (AR-0001-3), undisclosed classified sources (AR-0004-5), and secret evidence (AR-00006-62 -- Exhibits 3-15 withheld in Full) for its allegations and refusal to grant reconsideration – allegations for which no substantiated evidence exists. For example, the Government alleges that Arya Niroo Nik was a front for Fulmen in the Qom project. This is false.  This allegation originated in Europe on untrustworthy blogs (See, e.g. Pls' Exhibit "B").  According to the open sources, Arya Niroo Nik was started in 1901, long before Fulmen was incorporated in 1975 (See, e.g. Pls' Exhibit "B").  It is in a different line of business

---

[10] The International Atomic Energy Agency or IAEA, is an international organization that seeks to promote the peaceful use of nuclear energy, and to inhibit its use for any military purpose, including nuclear weapons. The IAEA was established as an autonomous organization on 29 July 1957.  It is' headquarters is located in Vienna, Austria.

and, perhaps more important, has been removed from the EU sanctions list in 2014 and England (UK) list in 2019 (Pls' Exhibit "C").

14.    The unclassified portions of the Administrative Record reveal that OFAC relied on news clips (AR-0004-5), reports and other sources rejected by the EU Courts as unreliable and/or false. Specifically, the allegations for which the Government relied on these sources:

   a.    Fulmen's involvement with the Qom/Fordoo site and its connections with Arya Niroo Nik (AR-0004-5);

   b.    Fulmen's involvement with the Nataz project or its connections with Kayale Electronic Company;

   c.    Fulmen's purchase of off-the-shelf lithium battery from Saba, manufactured for civilian use.

15. The entity Arya Niroo Nik has already been removed from the EU/UK sanction lists in 2014 and 2019, respectively (Pls' Exhibit "C")

So far, Defendants have produced no evidence whatsoever that Fulmen, directly or indirectly, knowingly or unknowingly, as alleged above, that amounts to providing support of any kind or **materially contributed to the proliferation of weapons of mass destruction** (emphasis added) as required by IEEPA.

As such continued designation of Fulmen on the SDN is a travesty of justice.

# ARGUMENT

## I. THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS

### A.  The Applicable Standards under Rules 12(b)(1), 12(b)(6) and 56

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations, including mixed questions of law and fact, as true and draw all reasonable inferences therefrom in the Plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft,* <u>333 F.3d 156</u>, 165 (D.C.Cir.2003); *Browning v. Clinton,* <u>292 F.3d 235</u>, 242 (D.C.Cir.2002).

Dismissal for failure to state a claim is warranted only where a plaintiff cannot prove any set of facts that would entitle him or her to relief. *e.g. Rochon v. Gonzales,* 438 F.3d 1211, 1216 (D.C. Cir. 2006). Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, at 89 (1998), quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U. S. 661, 666 (1974).

If matters outside of the pleadings are brought in a Rule 12(b)(6) motion, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The court may grant a motion for summary judgment, provided "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Generally, only the pleadings are considered when deciding a motion to dismiss under Rule 12(b)(6); however, if extrinsic evidence is considered, all parties must

be given a reasonable opportunity to present all material pertinent to the motion. Fed. R. Civ. P. 12(d).

Fulmen has sufficiently pleaded each of its claims. Compl. ¶¶ 35-48. Specifically, Fulmen states:

> Pursuant to Executive Order 13382 of June 28, 2005, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters" ("E.O. 13382"), **in a reciprocity action with European Union,** on November 21, 2011, OFAC included the Plaintiffs on the SDN list …. – emphasis added.
> (Count I). ¶ 36.

> Being on the SDN list, has deprived and continues to deprive the Plaintiffs of their property, liberty, loss of business and reputation. (Count I). ¶ 37.

> Prior to the designation, Plaintiffs received no notice from the President or OFAC of their proposed designation and was afforded no opportunity to be heard or otherwise contest the proposed designation. (Count I). ¶ 38.

> The Defendants have deprived, and continue to deprive, the Plaintiffs of property, liberty, loss of business and reputation without due process in contravention of the Fifth Amendment of the United States Constitution. (Count I). ¶ 39.

> Defendants violated and continue violating the due process rights of Plaintiffs by arbitrary decision to include them on the SDN list without meaningful procedural protections. (Count II). ¶ 41.

> Under federal law, constitutional due process protections apply to Foreign Corporation. (Count II). ¶ 42.

> The Defendants have violated and continue to violate Plaintiffs' rights afforded them by the Fifth Amendment's substantive due process protections. (Count II). ¶ 43.

> The Fifth Amendment of the United States Constitution prohibits the taking of private property for public use without just compensation. (Count III). ¶ 45.

The designation completely deprives the Plaintiffs of all economically beneficial use of its name, reputation, property and assets without just compensation. (Count IIII). ¶ 46.

The final agency action taken by the Defendants on July 20, 2018 (Exhibit "B"), has violated and continues to violate Plaintiffs' rights afforded to them by the Fifth Amendment takings clause. (Count III). ¶ 48.

Whether Fulmen's claims can be borne out or not is not for resolution on a 12(b)(6) motion. *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000). Based on the foregoing, Defendants' motion to dismiss Counts I-III should be denied.

## B. Fulmen Has Standing To Assert Claims For Violation Of The Constitution.

Defendants argue that Counts I through III of the Complaint should be dismissed because Fulmen lacks sufficient connection with the United States to entitle it to constitutional rights. Defs.' Br. at 16-20. However, "[a]liens who have 'come within the territory of the United States and developed connections with this country' ... are entitled to constitutional protections." *Al-Aqeel v. Paulson,* 568 F. Supp. 2d 64, 69 (D.D.C. 2008), quoting *Nat'l Council of Resistance of Iran v. Dep't of State ("NCRI"),* 251 F.3d 192, 201 (D.C. Cir. 2001).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).   In determining whether administrative procedures are constitutionally adequate, courts generally weigh three factors:

First, the private interest that will be affected by the official action;

Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and

Third, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

(see, *Tarek H. Jifry, et. al. v. FAA, et al.*, DC Court of Appeals, Nos. 03-1085, 03-1143, 03-1144 and 03-1282. Decided: June 11, 2004)

Fulmen satisfies this test. As the U.S. Supreme Court has made clear, ". . . a foreign organization that acquires or holds property in this country may invoke the protections of the Constitution when that property is placed in jeopardy by government intervention," *NCRI,* 251 F.3d at 204, citing *Russian Volunteer Fleet v. United States,* 282 U.S. 481, 491-92 (1931). The State Department/OFAC froze Fulmen's assets and would not permit them to acquire any property in the United States.  As such, Plaintiffs are entitled to a constitutional claim for due process.[11] "(T)he universe of non-resident aliens who can invoke the Constitution is *not* limited to situations in which the *res* is subject to the court's jurisdiction" *Cardenas,* 733 F.2d at 917.

---

[11] *Cardenas v. Smith,* 733 F.2d 909, 913 (D.C. Cir. 1984), ("although the seized accounts were located in Switzerland, if Cardenas could demonstrate that she was the victim of a conspiracy within the Justice Department, at least part of the injury arguably would have occurred in this country").

## C. Fulmen's Procedural Due Process Claim Is Not Time-Barred Because Fulmen was Required to Exhaust the Administrative Remedies Before pursuing a Claim in Court

Defendants argue that Fulmen's claims under the Fifth Amendment is time barred by six-year statute of limitation.  This would be true had Plaintiffs not been required to exhaust administrative remedies before pursuing a claim in court. As provided by OFAC procedures,[12] to request removal from SDN list, one must first ask OFAC for Reconsideration. *Id*. There is no time frame by which OFAC must respond to designation challenges. As a result, OFAC can, and in this case, did, take years to act on a reconsideration request (see *Al Haramain*, 686 F.3d at 974).[13]

Here, the record is clear. The Department of State designated Fulmen on November 21, 2011. AR-00063-64, AR-00075-77.  Fulmen contacted OFAC and requested "reconsideration" on October 20, 2014 (AR-00083-5).  OFAC did not issue its final decision until July 20, 2018 (AR-00501-2).  Fulmen filed the Complaint on December 14, 2018.  The statute of limitations tolled during the mandatory administrative process that took about four years.   Thus, filing of Fulmen's Complaint on December 14, 2018 was timely.

---

[12] https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/petitions.aspx

[13] *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012)

### D. Fulmen's Procedural Due Process Claims Do Not Fail On The Merits

Plaintiffs have been provided no reasonable or fair opportunity to challenge the allegations against them, and have been denied access to the large amount of so-called secrete evidence (AR-0001-4; AR0006-62) to justify the continued designation. Furthermore, by ignoring the decision of the Court of Justice of the European Union, OFAC's review of Fulmen's application for reconsideration falls short of any meaningful review or due process and, therefore, is arbitrary and capricious.

### E. Defendants' Reliance on Secret Evidence Violated Fulmen's Due Process Rights

The administrative record includes several heavily redacted pages (AR-0001-4; AR-72-3;) that apparently form the basis for OFAC's denial of Fulmen's delisting application (AR-0006-0062). OFAC violated, and continues to violate, Fulmen's due process rights because it has refused to make any provision to allow Fulmen any meaningful opportunity to respond to the classified evidence. Because Fulmen does not know, *inter alia,* the source of the allegations, their credibility, or the basis for the sources' knowledge (AR-00001-3; Ar-00006-00062), Plaintiffs cannot challenge the purported evidence in a meaningful way. *See, e.g., Kiareldeen v. Reno,* 71 F. Supp. 2d 402, 413 (D.N.J. 1999) ("The petitioner has been compelled by the Government to attempt to prove the negative in the face of anonymous 'slurs of unseen and unsworn informers.'") (internal citation omitted). The U.S. Supreme Court has explicitly held that a party's attempt to rely on classified evidence undermines the fairness of the adversarial process:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where Governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.

*Greene v. McElroy,* 360 U.S. 474, 496 (1959); *Goldberg v. Kelly,* 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); *Abourezk v. Reagan,* 785 F.2d 1043, 1060 (D.C. Cir. 1986) (open proceedings "preserve both the appearance and the reality of fairness"), *aff'd,* 484 U.S. 1 (1987). Indeed, the EU courts ruled in favor of Fulmen because the EU Council failed to produce sufficient evidence in an appropriate manner to justify its conclusion that Fulmen had engaged in the activity for which it had been designated (See, e.g. Footnote 7; AR-00138-153).

Furthermore, IEEPA does not *require* the use of classified evidence, as Defendants essentially argue, and does not in any way *preclude* the use of less restrictive measures. 50 U.S.C. § 1702(c). The Government makes no attempt to explain why it did not use less restrictive means, and instead is intent on proceeding secretly without affording Plaintiffs any opportunity to confront the evidence being used against them. Even in the Guantanamo detainees' litigation cases, the D.C. Circuit ordered that the detainees' counsel be allowed to review most of the classified evidence relating to their clients. *Bismullah v. Gates,* 501 F.3d 178, 180, 187 (D.C. Cir. 2007), *pet. For reh'g en banc denied,* 514 F.3d 1291 (D.C. Cir. *2008),pet.for cert.filed,* No. 07-1054 (U.S. Feb. 14, 2008) ("we presume

14

counsel for a detainee has a 'need to know' all Government Information concerning his client, not just the portions of the Government Information presented to the Tribunal.").

Defendants' attempt to obtain a premature dismissal of Fulmen's Complaint based on evidence that Fulmen has no opportunity to confront violates all notions of fairness, is contrary to our adversarial system, and should not be countenanced. *Abourezk,* 785 F.2d at 1061 (it is "the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte, in camera* submissions"). For all of the foregoing reasons, Fulmen's Complaint should not be dismissed.

### F. Continued Designation with No Foreseeable Termination is Taken Under The Fifth Amendment.

Defendants move to dismiss Count III of the Complaint, based on the argument that, under the Tucker Act,[14] the Court of Federal Claims has "exclusive jurisdiction" over taking claims under the Fifth Amendment. However, Fulmen has not pleaded a claim for, and is not seeking, monetary damages. Therefore, this Court has subject matter jurisdiction. *Van Drasek v. Lehman,* 762 F.2d 1065, 1068 (D.C. Cir. 1985) (where a claim under [the] Fifth Amendment does not seek monetary relief, it need not be pursued under the Tucker Act in the Court of Federal Claims).

---

[14] The Tucker Act (March 3, 1887, ch. 359, 24 <u>Stat.</u> 505, 28 U.S.C. § 1491)

Defendants also argue that the blocking of assets does not constitute a "taking" under the Fifth Amendment because it is "temporary." Defs.' Br. at 21. For the nearly seven years since the Government designation, Plaintiffs not only have been deprived of their assets, but has also have  suffered significant financial losses and been unable to continue and perform under pre-existing contracts, including contracts in South Korea.[15]  Moreover, the lack of any mechanism for Fulmen to further contest the designation or blocking renders the deprivation permanent. As the Ninth Circuit noted, seizure "can ripen into a permanent taking." *Flores v. United States,* 551 F.2d 1169, 1175 n.6 (91 h Cir. 1977); see also *Youngstown Sheet & Tube Co* v. *Sawyer,* 343 U.S. 579, 631 (1952) (noting that even a temporary seizure of a plant "is a taking in  the constitutional sense ... though the seizure is only for a week or a month, the condemnation is complete").

For all the reasons stated, Plaintiffs' taking claim under the Fifth Amendment should not be dismissed.

## II.  THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS FULMEN'S APA CLAIMS

Even though Fulmen was designated by the Department of State, OFAC is responsible for administering the SDN List, and OFAC is where one needs to challenge any designation.  OFAC offers an administrative procedure for removal that a designee must follow.[16]   The administrative process is known as

---

[15] See Footnote 5, *Supra*

[16] https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/petitions.aspx

"reconsideration." According to OFAC, there are two bases on which one can seek removal from the list. First, being placed on the list by mistake; second change in circumstances. *Id* In the instant matter, Fulmen filed an application for reconsideration claiming mistake and provided the decisions of the EU Courts. OFAC instead reviewed the application under "change in circumstances."

## A. Standard of Review

The APA provides that, to the extent necessary to the decision, and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. 5 U.S.C. § 706. Further, a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed, and hold unlawful and set aside agency action found to be arbitrary and capricious, without observance of procedure required by law, or unwarranted by the facts to the extent such facts are subject to trial *de novo* by the reviewing court. 5 U.S.C. §§ 706(1) and (2).

In determining whether an APA violation has occurred as a result of an agency action, the Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Holy Land,* 219 F. Supp. 2d 57 at 66-67, quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Indeed, "the Court must review the administrative record assembled by the agency to determine whether its decision was supported by a **rational basis**." *Id*. at 67 (emphasis added). The Court must ensure the agency has examined the relevant data and articulated a

17

satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

OFAC has broad (mostly unchecked) power to block any and all assets of an entity subject to U.S. jurisdiction at any time, for any amount of time, and on virtually any level of suspicion.[17] Such power requires independent judicial review.

## B. OFAC's Denial of Fulmen's Request for Delisting is Arbitrary and Capricious

An agency's action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). It is true that "matters relating to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Regan v. Wald*, 468 U.S. 222, 242 (1984). Plaintiffs do not dispute the plethora of jurisprudence cited by Defendants as to this point. Defs.' Mot. to Dismiss at 14-15. However, substantial deference does not, and should not, translate to a complete deference to the Executive; otherwise Congress would not have permitted judicial review of agency action under the APA. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

---

[17] *KindHearts for Charitable Humanitarian Development, Inc. v. Geithner (KindHearts III)*, 710 F. Supp. 2d 637, 647 (N.D. Ohio 2010)

Here, OFAC ignored the EU Courts' decisions and finding of facts despite the EU Council's actions having been the basis for Fulmen's listing and the Courts' decisions having been the basis for Fulmen's application for reconsideration.  Such a disregard of, and lack of interest in, the rulings – and instead relying on uncorroborated, biased, and unsubstantiated sources -- is so arbitrary and capricious that deference to the agency is unwarranted and judicial review required .  Accordingly, Defendants' motion for summary judgment should be denied and OFAC's denial should be set aside pursuant to Count IV of Fulmen's Complaint as a matter of law and pursuant to the principle of collateral estoppel.

### C.  OFAC's Denial was made without Adhering to Required Procedure

A court may hold unlawful and set aside agency action that is found to be "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Regulations provide that the information submitted by the blocked person seeking unblocking or by a person will be reviewed by OFAC. 31 C.F.R. § 501.807(b).[18]

OFAC violated § 501.807(b) in that the decision of the Court of Justice of the European Union (and the decision of the General Court reviewed therein) were not referenced in its July 20, 2018 denial of reconsideration (AR-000501-2).

---

[18] A "blocked person" is defined as a "person blocked under the provisions of any part of this chapter, including a specially designated national, specially designated terrorist, or specially designated narcotics trafficker . . ." 31 C.F.R. § 501.807(a).

As such, Plaintiff can only conclude the ruling was not considered and be left to wonder what other information it submitted was not properly reviewed.

As such, this Court should set aside OFAC's denial of reconsideration and grant Fulmen the relief sought under Count IV as a matter of law.

### D. In a Case Similar to Fulmen, OFAC Delisted Gotovina from the SDN List: Gotovina v. OFAC at. al. (D.C. District Court Case No. 14-cv-00016)

In a case similar to Fulmen, OFAC recently removed Ante Gotovina, from its SDN list.  In January 2014, retired Croatian lieutenant general Ante Gotovina filed a complaint in this court to be removed from OFAC's SDN list after he was acquitted of war crimes in November, 2012, by the appeals division of the International Criminal Tribunal for the Former Yugoslavia.[19]  Gotovina claimed that he should be removed based on the 3-2 reversal by an Appeals Panel of the International Criminal Tribunal for the Former Yugoslavia ("ICTY") of his conviction for war crimes. In fact, lack of OFAC's response to a delisting request was the primary reasons for filing the complaint. *Id* ¶¶ 10-11, 14 In the case of Mr. Gotovina the U.S. Department of State accepted the acquittal ruling, yet OFAC never responded to Mr. Gotovina's April, 2013, delisting request. Gotovina renewed request in August, 2013, but OFAC still did not respond. *Id.* at ¶¶ 11, 15-16.  In his complaint, Mr. Gotovina alleged that OFAC violated the Administrative Procedure Act by "unreasonably delaying the removal of [him] from the SDN List,

---

[19] Complaint at ¶¶ 10-11, 14: *Gotovina v. OFAC et al.* (DC District Court Case No. 14-cv-00016)

and by unreasonably delaying a written response to [his] request that he be removed from the SDN List." *Id.* at ¶ 24  A month after the complaint was filed, OFAC removed Mr. Gotovina from the list and the litigation was dismissed.[20] Here OFAC never acknowledged the decisions of the EU Court on Fulmen and its failure to do so, supported the arbitrary nature of its decision that necessitates a *de novo* review by this court.

### E.  OFAC's Denial Should be Reviewed *De Novo*

A court may set aside agency action that is found to be "unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court." 5 U.S.C. § 706(2)(F). A court is authorized to review an agency action *de novo* "when the action is adjudicatory in nature and the agency fact finding procedures are inadequate." *Citizens to Preserve Overton Park*, 401 U.S. at 415; *Cabinet Mountains Wilderness v. Peterson*, 685 F. 2d 678, 685-86 (D.C. Cir. 1982).

OFAC does not have a traditional agency review process, lacking the oversight of an administrative adjudicatory system. Rather, OFAC engages in investigatory, enforcement, and reviewing functions from within, rendering its procedures indicative of an adjudication process.

Fulmen fully complied with the administrative reconsideration procedures set forth in 31 C.F.R. Part 501. Despite the regulations codified in 31 C.F.R. § 501.807, there is no guidance as to the standard of review, or any standard for

---

[20] Unblocking of Three Individuals Blocked Pursuant to Executive Order 13219, as Amended, 79 Fed. Reg. 7,280 (Feb. 6, 2014) – Exhibit "C"; *see also* Stipulation of Dismissal filed in *Gotovina* Case in this court on February 10, 2014 (DC District Court No. 14-cv-00016).

that matter, by which OFAC must operate in rendering or removing its SDN designations. As such, Defendants fact finding procedures are inadequate and Fulmen's reconsideration request should be reviewed by this Court *de novo*.

### III. Fulmen Is Entitled To A Writ Of Mandamus

Fulmen has properly invoked a Writ of Mandamus for the remedy it is seeking.  Fulmen has done nothing wrong to be SDN-designated, and satisfies the three-prong test established by *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

(1) a clear and indisputable right to relief;

(2) the government agency or official is violating a clear duty to act, and

(3) no adequate alternative remedy exists.

If Defendants properly considered the EU court decision, those available through IAEA, UN, and other evidence provided by Fulmen over a four-year period (instead of relying on outdated and untrustworthy websites and blogs), Fulmen would have been removed from the SDN list; thus receiving the requested relief.  The first prong is thus satisfied.

Fulmen satisfies the second prong of the test because OFAC failed to consider competent evidence, failed to address or discount the EU court decision, while relying on the untrustworthy and unsubstantiated information during the review.  This listing was initiated as a consequence of reciprocity with the EU, but OFAC has maintained the listing even after rejection of that evidence by the EU courts.

Fulmen satisfies the third prong of the test, since administrative reconsideration is mandatory and there is no appeal from or remedy for denial except through the courts. As such, Fulmen's claim for a Writ of Mandamus should not be dismissed.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

Defendants move for summary judgment with respect to Fulmen's cause of action for violating the APA.  It should be denied.

### A. The Relevant Standard

When addressing a motion for summary judgment, the burden is on the movant to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). As the moving party, Defendants bear the burden of producing admissible evidence of material facts. See, e.g.*, Giannullo v. City of New York,* 322 F.3d 139, 140-41 (2d Cir. 2003). Moreover, the court must view the evidence in the light most favorable to the party opposing summary judgment. *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C. Cir. 1992). Defendants have not met this burden.

In addition, summary judgment should rarely be granted "when the plaintiff has not had an opportunity to resort to discovery procedures," *Deleu v. Scaife,* 775 F. Supp. 712, 716 (S.D.N.Y. 1991), and therefore, granting summary judgment before any discovery at all is generally improper. *Hellstrom v. United States Dep't of Veteran Affairs,* 201 F.3d 94, 97-98 (2d Cir. 2000).

Finally, as set forth herein and in Plaintiffs' Complaint, there are material issues of fact in dispute, including, but not limited to, Plaintiffs' alleged involvement with the Qom/Frodoo and Nataz sites/projects, and their alleged relationship with Kalaye Electric Company – and the alleged proof offered thereof. Such disputes preclude summary judgment and Defendants' motion should be denied.

### B. Pursuant To Rule 56(f) of the Federal Rules of Civil Procedure, Fulmen Must Be Granted Discovery.

The purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *A.S.P.C.A. v. Ringling Brothers and Barnum & Bailey Circus,* 502 F. Supp. 2d 103, 106 (D.D.C. 2007) (internal quotation marks and citations omitted). Fulmen must be granted the opportunity to conduct such discovery before summary judgment is even considered. *Lowe v. Winter,* No. 06-1803 (ESH), 2007 WL 2015389, at *1 (D.D.C. July 12, 2007).

### V. FULMEN IS ENTITLED TO SUMMARY JUDGMENT ON ITS CROSS-MOTION

Plaintiffs moved for summary judgment under the principle of Collateral Estoppel on the entire claim or, in alternative, on the issues already litigated in EU Courts.

### A. The Relevant Standard on Summary Judgment

Discussed *Supra.*

24

**B. Standard on Collateral Estoppel**

The doctrine of collateral estoppel (or "issue preclusion") bars litigation of

an issue when

> (1) the issue is actually litigated and
> (2) determined by a valid, final judgment on the merits;
> (3) after a full and fair opportunity for litigation by the parties or their privies;
> (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Smith v. Jenkins,* 562 A.2d 610, at 617 (D.C. 1989); *Ali Baba Co. v. WILCO, Inc.,*

<u>482 A.2d 418</u>, 421 (D.C.1984); W*ashington Med. Ctr. v. Holle*, 573 A.2d 1269, 1283

(D.C. 1990); *Hogue v. Hopper*, 728 A.2d 611 (D.C. 1999).

Collateral estoppel applies not only to judicial adjudications, but also to

determinations made by agencies other than courts, when such agencies are

acting in a judicial capacity. See *District Intown Properties, Ltd. v. District of*

*Columbia Dep't of Consumer & Regulatory Affairs*, 680 A.2d 1373, 1378 n.7 (D.C.

1996) (citations omitted). "A party whose claims have been decided in arbitration

may not then bring the same claims under new labels." *Schattner v. Girard, Inc.*,

215 U.S. App. D.C. 334, 336, 668 F.2d 1366, 1368 (1982) (per curiam) (citation

omitted).

Here, Fulmen satisfies the four conditions stated above:

**(1) the issues have already been litigated.**

The Fact Sheet published by the Department of State on November 21,

2011, in its entirety states:

EU Councils and the Department of State/OFAC made the same
allegations: "The Fulmen Group was involved in procuring goods for

the covert uranium enrichment facility at Qom while the facility was still an undeclared site from 2006 through 2008.

From May 2006 until at least September 2008, Fulmen was involved in many facets of the construction of Qom. Additionally, Fulmen has worked with the U.S.- and UN-designated firm Kalaye Electric on the construction of elements of the Natanz Uranium Enrichment Plant.

The preamble of UNSCR 1929 noted that Iran has not established full and sustained suspension of all enrichment-related and reprocessing activities, as set out in Resolutions 1696, 1737, 1747, and 1803, making Fulmen's activities at both Qom and Natanz a material contribution to those facilities' gas centrifuge plant for uranium enrichment.

Iran has failed to meet the requirements of the IAEA Board of Governors regarding disclosure of activity at Qom, including providing the IAEA with design information and permitting the IAEA to verify that information as required by its Safeguards Agreement and by Modified Code 3.1 of the Subsidiary Arrangement to its Safeguards Agreement. Iran also refuses to provide the IAEA with a chronology of the development of Qom, as requested by the IAEA.

The European Union noted in Council Implementing Resolution 668/2010 (July 26, 2010) that Fulmen was involved in the installation of electrical equipment on the Qom/Frodoo site at a time when the existence of the site had not yet been revealed. The EU also noted that Arya Niroo Nik is a shell company used by Fulmen for some of its operations. The EU has also designated Fereydoun Mahmoudian as the Director of Fulmen.

Clearly, any allegations related to the Qom/Frodoo site and Arya Niroo Nik Company have already been fully litigated for which Plaintiffs are entitled to Summary Judgment or in the alternative for partial summary judgment.

On allegations related to Kalaye Electric and Natanz Uranium Enrichment, Plaintiff adamantly denies these unfounded allegations and submits that they are added to the Department of States list to make it look different than EU charges; otherwise, Defendants have no evidence against Fulmen.

In short, at the very least the issues and allegations related Qom/Frodoo site and Arya Niroo Nik were the same presented by the EU Council and that were fully litigated in Europe.

**(2) determined by a valid, final judgment on the merits;**

There is no dispute the judgments rendered by the courts in Europe were valid and final (See, e.g. AR-00136-54).

**(3) after a full and fair opportunity for litigation by the parties or their privies;**

As a partner with the EU Council and having repeated the same allegations against Fulmen in October of 2011 during, Defendants were and should have been fully aware of the proceeding in the EU Courts and in all likelihood have participated in the process through their EU partners.  In any case, as the EU Court documents show (AR-00136-54), there were full opportunities for the litigants to present their evidence.

**(4) under circumstances where the determination was essential to the judgment, and not merely dictum.**

The Judgment of the Court of Justice (AR-00134-54) clearly shows the determination was essential to the judgment, as evidenced by the EU's removal of Fulmen from its sanctions list. Plaintiffs have satisfied all conditions for collateral estoppel in this district and are entitled to summary judgment on its Cross-Motion as a matter of law, along with any other relief deemed appropriate by this Court.

**C. This Court Should Recognize and Enforce The Judgment of The EU Court of Justice**

Under the general principle of international law, a foreign state exercises the right to examine foreign judgments for four causes: (1) to determine if the

court that issued the judgment had jurisdiction; (2) to determine whether the defendant was properly notified of the action; (3) to determine if the proceedings were vitiated by fraud; and (4) to establish that the judgment is not contrary to the public policy of the foreign country. While procedures and documentary requirements vary widely from country to country, judgments which do not involve multiple damages or punitive damages generally may be enforced, in whole or in part, upon recognition as authoritative and final, subject to the particulars cited above, unless internal law mandates a treaty obligation.

Here, the Department of State recognized the judgment of an Appeals Panel of the International Criminal Tribunal for the Former Yugoslavia in favor of Gotovina (discussed *supra*) and caused the removal of Gotovina from the OFAC SDN list, while it failed to even acknowledge, let alone recognize and honor, the final order of the EU Court of Justice issued in favor of Fulmen.  This selective recognition of foreign judgments and total disregard to the decision of highest court in EU system which closely resemblance to the US Justice System, does nothing but to erode the standing of U.S. legal system that is marveled around the world.  Accordingly, the final judgment of **EU Court of Justice** affirming the decision of General Court should be recognized and enforced by granting Fulmen's Cross-Motion for Summary Judgment on the issues already litigated and decided in EU Courts.

## CONCLUSION

Wherefore, as more fully described above, Fulmen respectfully asks that the Court deny Defendants' motion in its entirety and grant Plaintiffs' Cross-Motion as a matter of law pursuant to the doctrine of collateral estoppel, order delisting of Fulmen, along with any other relief requested or deemed proper by this Court.

Dated: April 21, 2019

Respectfully submitted,

**Address:**

**/s/**

Saeid B. Amini

730 24th Street, NW, Suite One

Washington, DC  20037

202-306-9444

202-965-4446 (fax)

sbajd98@yahoo.com

_____

Saeid B. Amini (Bar No. 978340)

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Opposition to Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment, and Cross Motion for Summary Judgment was served to all parties on the 21th day of April, 2019, via the ECF system.